[Civ. No. 4657. Second Appellate District, Division One.—December 10, 1926.]

## HUBERT A. VIEUX et al., Respondents, v. CORALYN A. VIEUX, Appellant.

[1] HUSBAND AND WIFE — PROPERTY RIGHTS — CIRCUMSTANCES SURROUNDING PURCHASE—USE AS COMMUNITY.—For the purpose of determining the respective property rights of the husband and the wife the circumstances surrounding the purchase of the property should receive consideration; and where prior to marriage the parties viewed the property and concluded that it was desirable for community purposes, the fact that after marriage they used it in that manner, and applied community funds in payment of the purchase price, confirms the thought that, as between them, the property was considered as "community" rather than "separate" property, although the contract of purchase was taken in his name and the first payments were made from his separate property.

[2] ID.—CHANGE OF STATUS—AGREEMENT OF PARTIES.—By agreement between husband and wife the status of any property owned by them may be changed from separate to community, and *vice versa.*

[3] ID. — PURCHASE UNDER INSTALLMENT CONTRACT — USE OF COMMUNITY FUNDS—OWNERSHIP.—For purposes affecting strangers, the acquisition through an installment contract of the right to purchase real property may be considered as ownership of such property in that such holding may entitle the intending purchaser

---

1. See 5 Cal. Jur. 323.
2. See 5 Cal. Jur. 346; 5 R. C. L. 855.

to the possession and the use of the property to the exclusion of others; but as between husband and wife, where community funds are used to a considerable extent in the payment of the purchase price, the meaning of section 163 of the Civil Code, defining separate and community property, cannot be so limited.

[4] ID.—CONFIDENTIAL RELATIONSHIP—STATUTORY CONSTRUCTION—INTENT—DEFINITION OF OWNERSHIP.—The confidential relationship existing between husband and wife forbids such a strict construction to be placed upon section 163 of the Civil Code as will destroy the probable intent of the husband and wife with reference to the manner in which the ownership of the property is enjoyed; rather it should be assumed that, when the legislature undertook to define separate property as that owned by the husband before marriage, the ownership in the husband through and by virtue of which the wife's interest would be entirely excluded, would necessarily be an absolute ownership, as distinguished from a limited ownership, and that, so far as community funds might participate in the acquisition or protection of vested rights, to that extent proportionally should the property be considered as "community."

[5] ID.—PURCHASE PRIOR TO MARRIAGE — COMMUNITY CONTRIBUTIONS—PROPORTIONATE OWNERSHIP.—Where, prior to marriage and upon payment of a part of the purchase price, the husband acquired an inchoate right, on compliance with certain conditions, to become an absolute owner of certain real property, and those conditions were met after marriage with funds furnished by the community, aided by other funds issuing from the property agreed to be purchased, justice demanded that the rights of the parties be measured by the direct contributions made by the respective parties, i. e., the husband on the one hand and the community, consisting of the husband and wife, on the other, towards the purchase price of the property; and, on dissolution of the marriage, the trial court erred in determining that the wife had no interest thereon.

---

(1) 31 **C. J.**, p. 52, n. 28, p. 53, n. 47.    (2) 31 **C. J.**, p. 74, n. 29, 30, 40, p. 75, n. 44.    (3) 31 **C. J.**, p. 44, n. 55.    (4) 31 **C. J.**, p. 22, n. 22, p. 44, n. 55; 29 **Cyc.**, p. 1550, n. 8, 28 New.    (5) 31 **C. J.**, p. 44, n. 55.

APPEAL from a judgment of the Superior Court of Los Angeles County. Edwin F. Hahn, Judge. Reversed.

The facts are stated in the opinion of the court.

---

5. See 5 Cal. Jur. 288.

Schweitzer & Hutton and F. C. Stevens for Appellant.

Fogel & Beman and Niles C. Folsom for Respondents.

HOUSER, J.—This is an appeal from a part of the judgment rendered in a suit for divorce.

The facts material to this inquiry are set forth in the findings by the trial court as follows:

"That shortly prior to the marriage . . . plaintiff and defendant discussed and considered the purchase of lot 24, and together viewed said property, and it was agreed between them that said property would be a desirable purchase. That prior to said marriage the plaintiff entered into a contract for the purchase of said property . . . and the plaintiff did, at the time of entering into said contract, pay the sum of $280.00 on account of the purchase price thereof, and immediately took possession of said property. That thereafter plaintiff and defendant married, and after their marriage, the plaintiff and defendant expended on said real estate from community funds for payment on account of principal, interest and taxes, the sum of $553.68. That subsequent to the marriage of plaintiff and defendant, to-wit, on or about the 25th day of November, 1921, the plaintiff received the sum of $2200.00 as payment for a bonus for the execution of an oil lease covering said property, and that said sum of $2200.00 was paid by the plaintiff on account of the balance of the purchase price on said property; that subsequent to the payment of said sum of $2200 the plaintiff executed and delivered a deed of conveyance to said property to his parents, Aristide Vieux and Stephanus Vieux. That the plaintiff received no consideration from his parents for the execution and delivery of said deed, but said conveyance was made by the plaintiff for the purpose of getting the property out of his name and avoiding any claim or right which the defendant might have in said property. . . .

"That during the married life of the plaintiff and defendant, they accumulated community property to the amount and value of $713.60; that of said sum $553.68 was expended in and upon the hereinabove described real property."

From said findings it was adjudged and decreed that the defendant Coralyn A. Vieux had no right, title, or interest in and to the real property to which reference was made in the findings, but that said defendant "have and recover from said plaintiff the sum of $713.60, the value of the community property in the possession of said plaintiff, the sum of $150.00 as attorney's fees, and for the sum of $50.00 per month from November 16, 1922, until the further order of court, as alimony."

It is appellant's contention that that part of the judgment to which reference has just been had, to wit, that the defendant Coralyn A. Vieux had no right, title, or interest in and to the property in question, is not supported by the findings for the reason that the findings show that the said real property, or a portion thereof, was either the separate property of the defendant, or that it was community property of plaintiff and defendant, or at least that defendant had some right, title or interest therein.

The ultimate question presented to this court for its determination is whether in the circumstances as set forth in the foregoing findings of fact the property therein referred to was the separate property of the husband. Although the findings do not specifically so state, it may be inferred therefrom that the total purchase price of the property was in the neighborhood of $3,000—the sum of $280 having been paid by the husband prior to the marriage, the sum of $553.68 thereafter having been paid out of the community funds, and the further sum of $2,200, derived from the bonus for an oil lease on the property, having been used to complete the purchase price. It is therefore apparent that, so far as outlay on the part of the husband from his separate property was concerned in acquiring the property in question, he actually expended the sum of $280, or somewhat less than one-tenth of the purchase price; while the sum of $553.68, or approximately one-fifth of the purchase price, was contributed from funds belonging to the community.

Section 163 of the Civil Code provides that "All property owned by the husband before marriage, . . . with the rents, issues, and profits thereof, is his separate property."

80 Cal. App.—15

The only case arising in this state having a direct bearing upon the facts herein to which the attention of this court has been directed is that of *Martin* v. *Martin*, 52 Cal. 235, wherein it was held that if a husband purchased land on credit and afterward paid a portion of the price with his separate property and he and his wife secured the remainder of the purchase price with their joint note and a mortgage on the same, and he then sold a part of the land at a profit, and with the profit and proceeds paid the note, and with the remainder, increased by some of his separate property, built a house on the land not sold, the land not sold, and the house thereon, were the separate property of the husband.

It will be noted that the facts in the Martin case differ from the facts in the instant case, particularly in that in the Martin case no community funds were used in payment of the property, while in the instant case a large portion of the purchase price was paid by the community. A reading of the opinion in that case discloses the fact that the supreme court limits the decision to the point that the circumstance that the wife executed a joint note and mortgage with her husband in payment of the balance of the purchase price of the property could not affect the property rights of the parties, and that the supreme court expressly declined to decide whether the profits derived from the sale of a portion of the property purchased by the husband were community property.

[1] For the purpose of determining the respective property rights of the husband and the wife the circumstances surrounding the purchase of the property should receive consideration. While no transcript of the evidence received on the trial of the action has been presented to this court, sufficient facts are set forth in the findings to enable this court to perceive that prior to the marriage the parties together viewed the property and concluded that it was desirable for community purposes. The fact that thereafter they may have used it in that manner, and applied community funds in payment of the purchase price of the property, confirms the thought that as between the husband and the wife the property was considered as "community" rather than "separate." [2] The authorities are in accord that by agreement between husband and wife the

status of any property owned by them may be changed from separate to community, and *vice versa.* While no finding of the court recites the fact that the parties were "agreed" either at the time of the purchase or at any time thereafter that the property in question was "community," their action in the premises at least encourages the belief that before the marriage each of them considered the property as being prospectively "community" and after marriage the property was to be improved, sustained, supported, and finally completely and absolutely owned by them by reason of their common and joint efforts and savings. In the circumstances here present, it requires no wild stretch of the imagination to perceive a "meeting of the minds" without the form of express words, either spoken or written, to the effect that the property in question was not considered by the parties as exclusively in the husband, with the wife having absolutely no material right, title, or interest therein; but, to. the contrary, that the property was "theirs," each of the parties enjoying therein equal rights and privileges, at least as far as the community funds contributed to the payment of the purchase price thereof. In effect, it was somewhat in the nature of a partnership relationship that existed between the parties—the husband on the one side, and the community, consisting of the husband and the wife, on the other side.

[3] For purposes affecting strangers, the acquisition through an installment contract of the right to purchase real property may be considered as ownership of such property in that such holding may entitle the intending purchaser to the possession and the use of the property to the exclusion of others; but as between husband and wife, where community funds are used to a considerable extent in the payment of the· purchase price, the meaning of the statute relating to the definition of separate and community property of spouses cannot be so limited. [4] The confidential relationship existing between husband and wife forbids such a strict construction to be placed upon the statute as will destroy the probable intent of the husband and wife with reference to the manner in which the ownership of the property is enjoyed. Any other construction in these days of liberal terms with reference to installment purchase price contracts for the sale of real property, in-

cluding the possible provision of "a dollar down and a dollar per week," would permit a husband, or a prospective husband, to buy or to agree to buy any reasonable quantity of lots or lands on the payment by him from his separate funds of a comparatively insignificant sum and thereafter to pay practically the entire purchase price from the community funds, and yet successfully maintain that because in its inception the naked right to purchase, carrying with it the right of use and possession, was his separate property, it so remained. It would seem improbable that through general definitions of terms, the intention of the lawmakers was to bring about a result which, in many if not a majority of instances, would be of so disastrous and unjust a consequence. Rather should it be assumed that when the legislature undertook to define separate property as that owned by the husband before marriage, even though in other statutes the right of exclusive possession and use was specified as the *indicia* of ownership, the "ownership" in the husband through and by virtue of which the wife's interest would be entirely excluded, would necessarily be an absolute ownership, as distinguished from a limited ownership, and that, so far as community funds might participate in the acquisition or protection of vested rights, to that extent proportionally should the property be considered as "community."

In general terms, as provided by section 654 of the Civil Code, "the ownership of a thing is the right of one or more persons to possess and use it to the exclusion of others." While under the qualified ownership of the husband of the property here in question it is probable that he had the right of possession and use of it, if it may be assumed that the husband and wife were using it as their home (which fact, however, does not appear by the findings), the wife could not be excluded therefrom. (Civ. Code, sec. 157.)

In passing upon the meaning of the word "owner," as contained in a provision of a city charter, the supreme court of this state has ruled that "the term 'owner' includes any person having a claim or interest in real property, though less than an absolute fee." (*Higgins* v. *City of San Diego,* 131 Cal. 294, 304 [63 Pac. 470, 476].) That authority, however, can be regarded as nothing more than a generality, so far as the facts in the instant case are

concerned. Cases from other jurisdictions, particularly
*Guye* v. *Guye,* 63 Wash. 340 [37 L. R. A. (N. S.) 186, 115
Pac. 731] , *Barrett* v. *Franke,* 46 Nev. 170 [208 Pac. 435],
and *Heintz* v. *Brown,* 46 Wash. 387 [123 Am. St. Rep. 937,
90 Pac. 211], in effect hold that in circumstances analogous
to those indicated in the findings herein to which reference
has been had, a part of property involved may be regarded
as community and a part as separate—depending upon con-
ditions, not essentially on the manner in which the contract
for the purchase of the property was entered into or osten-
sibly acquired, but rather upon the manner in which the
payments were made; and while the principle announced in
such decisions has been subjected to some criticism, the
administration of strict justice to the parties concerned,
rather than the application to the facts of the hard rules
of law, lends an appealing force to the conclusions reached
in the cases to which reference has been had. The govern-
ing rule is indicated in 5 Ruling Case Law, page 834, as
follows: "Thus property purchased by one spouse before
marriage is separate property though the deed therefor is
not executed and delivered until after marriage, and this
is true though a part of the purchase price is not paid until
after marriage, in the absence of a showing that any part
of the balance was paid with community funds. In any
event it would be community property only to the extent
and in the proportion that the purchase price is contributed
by the community."

[5] In the instant case, the husband having acquired
an inchoate right, on compliance with certain conditions, to
become an absolute owner of the property in question, and
the facts showing that the required conditions were met
with funds furnished by the community, aided by other
funds issuing directly from the property agreed to be pur-
chased, justice demands that the rights of the parties should
be measured by the direct contributions made by the respec-
tive parties to the purchase price of the property. Accord-
ingly, the judgment of the trial court herein should have
indicated that the community interest was entitled to share
in the title to the property in the same proportion as the
amount contributed to the purchase price by the commu-
nity, to wit, $553.68, bore to the sum of $833.86—the total
amount paid by the respective parties therefor.

It is ordered that that part of the judgment from which the appeal herein is taken be and the same is reversed; and the trial court be and it is directed to enter a new judgment on its findings of fact in accordance with the law as indicated by the opinion herein.

Conrey, P. J., and York, J., concurred.

A petition by respondents to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 7, 1927.