[Civ. No. 3673. Fourth Dist. July 6, 1948.]

ANN MORRIS SMITH et al., Appellants, v. MINNESOTA MUTUAL LIFE INSURANCE COMPANY (a Corporation) et al., Respondents.

Gray, Cary, Ames & Driscoll for Appellants.

Luce, Forward, Lee & Kunzel for Respondents.

GRIFFIN, J.—From a judgment of dismissal after order sustaining a demurrer without leave to amend as to two causes of action set forth in the complaint, plaintiffs appeal.

Each cause of action is based upon the same alleged derelictions and negligence of defendants in their claimed unreasonable delay in acting upon an application of the deceased, Julius H. Smith, for a policy of life insurance.

In the first count, the widow, Ann Morris Smith, was plaintiff and alleged to be the beneficiary named in the application. In the second count, Josephine Irving, as administratrix of the estate of decesead, appeared as party plaintiff.

The complaint alleges generally that on December 17, 1945, the deceased, prior to his death, made written application to defendant company, through its agent, defendant Nunn, upon a form provided by it, for a policy of life insurance in the sum of $10,000; that he then paid the agent $21.20 as first premium and a receipt therefor, on a form provided and pleaded in the complaint, was issued. It recited, in part, that the policy would not take effect unless and until its delivery to the applicant and that the company would have until delivery of the policy to consider the question of the applicant's insurability. It then alleged that on December 28, 1945, the applicant was examined by a physician engaged by the company; that he had signed a statement concerning his physical condition; that in January, 1946, he received an inquiry requesting the name of the doctor who had operated on him in the spring of 1945; that the applicant was led to believe, by the defendants, and did believe, that the application would be accepted and the policy issued in accordance therewith within a reasonable time, or that in the event the application was not accepted, it would be rejected and he would be notified of the rejection within a reasonable time; that defendants negligently, carelessly and wrongfully failed to take action on the application within such time and failed either to issue or deliver a policy in accordance with the application or to give the applicant, or anyone, notice of the action, if any, on the application for insurance; that the delay continued until April 19, 1946; that on March 21, 1946, the applicant died; that his wife gave prompt notice of his death to defendant and demanded payment to her of the sum of $10,000, which would have been payable to her under the policy applied for and that defendant refused to pay said sum; that on April 19, 1946, plaintiff wife was informed by defendant company, for the first

time, that it contended that negotiations between the applicant and defendants had not been completed at the time of his death and that they would not pay said sum payable under the policy but would only return to her the premium thus paid; that the beneficiary, the applicant's wife, and his minor daughter, were his sole heirs. Then follows an allegation that deceased, at the time of the application, was in good health and was an insurable risk and would have been able to obtain a policy elsewhere but for the negligence of defendant; that defendant company issued a policy of life insurance for $10,000 "without the waiver of premium benefit" and with an additional premium charged for the first two years, which policy was never delivered to the applicant.

Plaintiffs and appellant first argue that a cause of action for negligently failing to act on the application did exist and cite many cases from other jurisdictions so holding, as well as some decisions of other states opposed to them. It appears that the question as to the right of the insured himself, under an accident policy, to bring such an action has been sustained in this state. (*Stark* v. *Pioneer Casualty Co.*, 139 Cal.App. 577, 580 [34 P.2d 731] (hearing denied by the Supreme Court); *Linnastruth* v. *Mutual Benefit etc., Assn.*, 22 Cal.2d 216, 219 [137 P.2d 833].)

In the Stark case it was stated (p. 580):

"An insurance company having solicited and obtained applications for insurance and having received payment of the fees or premium exacted, is bound, either to furnish the indemnity the state has authorized them to furnish or decline to do so within such reasonable time as will enable them to act intelligently and advisedly thereon. . . . It has been said that an applicant having paid the premium to an agent, and the company having received its share thereof and assumed the *duty of returning the same on rejection* of the application, the applicant did all required of him, and having received no notice of adverse action on his application, he might assume after several months that it had been accepted." (Italics added.) (Citing cases.) That "Mere delay in passing upon an application cannot be construed as an acceptance which will support an action *ex contractu*"; that the insurance company "may be held liable for actual damage not exceeding the amount of insurance purchased if it be shown to have delayed notice of rejection. . . ." (Citing authorities.) (Italics ours.)

*Duffie* v. *Bankers' Life Assn. of Des Moines,* 160 Iowa 19 [139 N.W. 1087, 46 L.R.A.N.S. 25] (cited with approval many times), was an action by the representative to recover against the insurance company for failure to pass upon a life insurance policy within a reasonable time. It was there held that the wife, as beneficiary, had no right of action but such right extended to the representative of the estate of the applicant. The question of the survivorship of the cause of action apparently was not raised, discussed or passed upon by that court.

In *Linnastruth* v. *Mutual Benefit etc. Assn., supra,* involving an accident policy, it was held that mere delay in passing upon an application for insurance is not sufficient to create a contract of insurance, and no liability may be imposed upon an insurer prior to the issuance of a policy where no facts are presented which would justify a finding of negligence on the part of the insurer, and it was likewise held that an interval of 16 days between the date of the application and the issuance of the policy was reasonable. In that case the action was by the beneficiary and based upon the *policy issued.* The injury was prior to the issuance thereof but death resulted from such injury after the issuance of the policy. It was held, by a divided court, that there had been no acceptance of the application by the company prior to the *accident* and that there was no liability since there was no finding or evidence of negligence on the part of the insured.

Defendants state in their brief that while the courts of other jurisdictions are in disagreement as to whether an action in tort, in any case, lies against an insurance company for negligent delay in acting upon an application for insurance, that it has been held in California that an insurance company, involving an action arising out of an accident policy, may be liable upon this theory *when the applicant himself brings the suit,* citing the Stark case; that the appellate courts of California have not passed upon the question whether such negligence involving a life insurance policy gives rise to a cause of action in one other than the applicant; and, specifically, whether such a cause of action, if any, survives and may be brought by either the proposed beneficiary or the personal representative of the deceased applicant; and that this is the sole issue presented by this appeal.

Plaintiffs seem to concede in their brief that with two or three exceptions (*Thornton* v. *National etc. Order U. A. Mechanics,* 110 W.Va. 412 [158 S.E. 507] ; *Bekken* v. *Equitable*

*Life Assurance Soc.,* 70 N.D. 122 [293 N.W. 200]; and *Brown* v. *Missouri State Life Insurance Co.,* 124 Okla. 155 [254 P. 7]), it has been universally held that a cause of action, under circumstances such as here related, may lie in favor of the representative of the estate, but not in favor of the named beneficiary merely by reason of being the beneficiary named in the application. (See *Forck* v. *Prudential Insurance Co.,* 228 Mo.App. 316 [66 S.W.2d 938]; *Griffith* v. *New York Life Insurance Co.,* 101 Cal. 627 [36 P. 113, 40 Am.St.Rep. 96]; and *Duffie* v. *Bankers' Life Insurance Co., supra.*) These cases, in effect, hold that negligence is a positive wrong, a breach of duty, and no person may recover damages because of the wrong save the one to whom the duty was owing. It therefore must be held that the mere fact that the plaintiff wife is named as a beneficiary in the application, in itself, would not give her a right of action against the defendants.

It is argued here, however, that the wife was the beneficiary and also one of the heirs of her husband's estate; that if the beneficiary had a community property interest in the policy or its proceeds and was to be, to that extent, an owner thereof, she would be the person injured, and would be the person who ought to recover, citing *Brown* v. *Missouri State Life Ins. Co., supra; Grimm* v. *Grimm,* 26 Cal.2d 173 [157 P.2d 841]; *Union Mutual Life Ins. Co.* v. *Broderick,* 196 Cal. 497 [238 P. 1034]; *Modern Woodmen of America* v. *Gray,* 113 Cal.App. 729 [299 P. 754]; and Civ. Code, § 161a; that under section 574 of the Probate Code on the question of survival of a cause of action, our Supreme Court has held that administrators may maintain an action against any person who has taken or converted to his own use, the property of their intestate, in his lifetime, even though the statute does not use the express words of "survival"; that the section affords the right to maintain actions after the death of those who could have been plaintiffs or defendants if they had lived, *in cases of injury to property,* and to that extent has created a departure from the common law rule that actions ex delicto do not survive; that said case specifically holds "that wherever a party has sustained an injury to his estate, whether *in being* or *expectancy,* as distinguished from an injury *to his person,* such injury is an injury to *property* within the meaning of that word in the present statute"; and that if it were an injury to the estate, the action survives and the administratrix is authorized to recover in her representative capacity in behalf of the estate.

Defendants and respondents argue that deceased had no cause of action in his lifetime as he suffered no compensable damage to his property or otherwise by reason of any tort of the insurance company during such period, and therefore no right of action existed to survive to his personal representative, citing *Thornton* v. *National etc. Order U. A. Mechanics,* 110 W.Va. 412 [158 S.E. 507] ; that even though the $21.20 premium paid the agent may have been community property, that money never would have become the property of the company until the policy was issued; that the widow never acquired any community interest in the policy because the application was never accepted; that the action was in tort and not based upon the policy; that under the common law rule an action in tort does not survive the death of the person wronged; that we must look to the statutes for any exception to that rule and the statutes referred to by plaintiffs do not modify the common law rule under the facts here related.

The common law rule, as set forth in *Hunt* v. *Authier,* 28 Cal.2d 288, page 290 [169 P.2d 913, 171 A.L.R. 1379], is as follows:

"At common law the maxim, *Actio personalis moritur cum persona,* persisted to effect the abatement of all actions and rights of action in trespass. All actions or causes ex delicto died with the person by whom or to whom the wrong was done, with the possible exception of the survival of the injured person's estate in cases of asportation of and damage to chattels . . ., and against the tort feasor's estate for wrongs whereby the latter was benefited. This was apparently the state of the law until 1833 . . ., when by the statute . . . causes of action for injuries to real estate survived to the personal representative of the deceased owner, and causes for injuries to real and personal property survived against the representatives of the deceased tort feasor. So that what remained of the substance of the common law rule was the nonsurvivability of causes of action for damages to the person as distinguished from damages to property. . . .

"The common law rule that tort actions did not survive has been looked upon with disfavor by the courts. . . .

"Thus the legislative tendency may be said to enlarge rather than to restrict the causes of rights of action which still survive."

Section 4468 of the Political Code provides that the "common law of England, so far as it is not repugnant to or incon-

sistent with the constitution . . . or laws of this state, is the rule of decision in all of the courts of this state.''

Several cases have been cited holding that such a cause of action as here pleaded does survive. (See *Columbian National Life Insurance Co.* v. *Lemmons,* 96 Okla. 228 [222 P. 255].) In that case there was a statute providing that all actions survived which survived at common law, as well as all actions founded on contract, and such an action may be brought by the administrator, notwithstanding the death of the person entitled to the same. In holding that such an action survived, the reasoning is adhered to by the court that there was an implied contract on the part of the company to act upon the application within a reasonable time and that such contract was the basis of the cause of action although it sounded in tort. (See, also, vol. 3, Schouler on Wills (6th ed.), p. 2191.)

In *Dyer* v. *Missouri State Life Insurance Co.,* 132 Wash. 378 [232 P. 346], in construing the statute of that state, it was held that the cause of action survived to the administrator. A dissenting justice claimed that the cause of action did not come into existence until the death had occurred and therefore no cause of action accrued to the deceased until his lifetime.

In this state, in *Evans* v. *Gibson,* 220 Cal. 476 [31 P.2d 389], arising out of a transaction involving an exchange of property, it was held that a cause of action for damages for deceit survived against the tort feasor's estate; and in *Ponsonby* v. *Sacramento Suburban Fruit Lands Co.,* 210 Cal. 229, 232 [291 P. 167], it was said that damage resulting from fraud and deceit was an injury ''to property'' considered in the sense of a lessening or diminution of plaintiff's estate.

In a fraud case, *Vragnizan* v. *Savings Union Bank & Trust Co.,* 31 Cal.App. 709 [161 P. 507] (hearing denied by the Supreme Court), the question of the survival of the cause of action was discussed at length. It was there said (p. 712) :

''When the action arises out of a tort, unconnected with contract, and which affects the person only and not the estate —such as assault and battery, false imprisonment, malicious prosecution, personal injuries—the action is purely personal and abates with the death of the wrongdoer. But when the action is *virtually founded upon contract,* though nominally in tort, it survives against the tort feasor's legal representatives. . . . And in the case of a tort resulting in the wrongful acquisition of personal property, the law imposing on the wrongdoer the duty of returning that property to the owner, the obligation at common law might be treated as *quasi* con-

tractual, and the neglect to perform it a breach of such contract; . . . in determining the question of survival, at common law the substantial cause of action might properly be treated as founded in contract.''

*Munger* v. *Equitable Life Asso. Soc. of the U. S.*, 2 F.Supp. 914, involved an action factually similar to the instant case. Therein many authorities relied upon by plaintiff here are cited and discussed. It was there definitely held that the nature of the action was one in tort and not ex contractu, and it was pointed out that the court would not there discuss the decisions of other jurisdictions because those decisions turned upon the statutes of those particular states in reference to survivorship, and definitely held that under the statutes of Missouri, no recovery could be had because such a tort did not survive the death of the person wronged.

In 15 American Law Reports, page 1026 and 75 American Law Reports, page 952, and cases cited thereunder, it appears that the weight of authority *is to the effect that mere delay in passing on an application for insurance does not create a contract of insurance. (Lucas* v. *Metropolitan Life Ins. Co.*, 14 Cal.App.2d 676 [58 P.2d 934] ; *K. C. Working C. Co.* v. *Eureka-Security etc. Ins. Co.*, 82 Cal.App.2d 120, 132 [185 P.2d 832] ; 1 Cal.Jur. §§ 12, 13, pp. 319, et seq.)

In *Bradley* v. *Federal Life Ins. Co.*, 295 Ill. 381 [129 N.E. 171, 15 A.L.R. 1021], the court disposed of the case in holding that no right of action survived the death of the applicant, since *it was admitted* by the parties to the proceeding that no cause of action accrued to the applicant until his death, and neither he nor his estate sustained any injury until that time; that since the death was not caused by the negligence of the defendant and the action was for damages to his estate for failing to pass on his application, and since no cause of action accrued to the applicant in his lifetime, no cause of action survived to his administrator. *Duffie* v. *Bankers' Life Assn. of Des Moines, supra; Boyer* v. *State Farmers' Mutual Hail Insurance Co.*, 86 Kan. 442 [121 P. 329, Ann.Cas. 1915A 671, 40 L.R.A.N.S. 164], and other cases are discussed and it is remarked that in the Duffie case the question of the action accruing or surviving to the plaintiff did not appear to have been raised; that in the Boyer case, involving hail insurance, the insured himself was the party plaintiff.

In *Savage* v. *Prudential Life Insurance Co.*, 154 Miss. 89 [121 So. 487], the administrator of the deceased applicant

brought suit alleging negligent delay in acting upon the application. The court held there was no cause of action.

■ Section 574 of the Probate Code authorizes the administrator to maintain an action against any person who has taken the property of the testator *in his lifetime.* If the applicant did have a cause of action against defendants during his lifetime, even if sounding in tort, but connected with contract, either express or implied, said cause of action survives to the administratrix of the estate.

■ A cause of action has been defined as the obligation from which the action springs, and quoting from Pomeroy, Remedies and Remedial Rights, section 452, et seq.: ". . . a cause of action arises out of an antecedent primary right and corresponding duty and the delict or breach of such primary right and duty by the person on whom the duty rests." Of these elements, the primary right and duty and the delict or wrong constitute the cause of action in the legal sense of the term and as it is used in the code states. (*McKee* v. *Dodd,* 152 Cal. 637 [93 P. 854, 125 Am.St.Rep. 82, 14 L.R.A.N.S. 780] ; 1 Cal.Jur. § 2, p. 307.) The cause of action is to be distinguished from the remedy which is the means by which the obligation or the corresponding action is effectuated, and also from the relief sought. (*Frost* v. *Witter,* 132 Cal. 421 [64 P. 705, 84 Am.St.Rep. 53] ; *Lemon* v. *Hubbard,* 10 Cal.App. 471 [102 P. 554] ; *Hurwitz* v. *Gross,* 5 Cal.App. 614 [91 P. 109].)

■ The term "accrue," as applied to a cause of action, means to arrive; to commence; to come into existence; to become a present enforceable demand. A cause of action accrues at the moment when the party owning it is entitled to begin and prosecute an action thereon. (*Los Angeles County* v. *Metropolitan Casualty Insurance Co.,* 135 Cal.App. 26 [26 P. 699, 27 P.2d 914].)

The reasoning applied in the case of *Columbian National Life Insurance Co.* v. *Lemmons, supra,* seems quite appropriate to a proper disposition of this case. There it was said (p. 258 [222 P.]) :

". . . The cause of action would survive to the administrator if founded on a contract. The same rule applies in actions on implied or quasi contracts, although founded upon a tort. . . .

"Was the cause of action founded on contract? We think it may well be held that there was an implied contract if not a legal contract . . . on the part of the insurance company to act on the application within a reasonable time; that is, either to accept the application and issue the policy, or reject the

same, so that the applicant could secure insurance elsewhere, and that the consideration for said contract was the making of the application at the solicitation of the agent, the submission by the applicant at the request of the agent to an examination by the examining physician for said company, and the payment of the premium for the first one-half year, which the receipt provided was for insurance from the date of said payment in case the policy was issued.

''Does the applicant acquire no rights by making an application, submitting to an examination, making a deposit, and forebearing to obtain other insurance, on the faith induced by the agent and the company that the application would be duly forwarded and acted upon? May the company with impunity receive an application and deposit, and take no action whatever? Those engaged in the insurance business need no reminding of the importance of prompt action in such matters. The applicant in the instant case had done all she could do, and had met all the requirements of the company in connection with an application for insurance, and then can it be said the company owed her no duty at all? We think not . . . the insurance company was bound by the receipt it issued . . . to act within a reasonable time upon said application, and its alleged failure so to do is the basis of the plaintiff's cause of action, and, although said action sounds in tort, it was based primarily upon said contract'' and under the statutes of Oklahoma ''the action therefore survived to and was properly brought by the administrator of the applicant's estate.''

In *Hunt* v. *Authier, supra* (p. 296) the majority opinion cites and adopts the definition of property under 50 Corpus Juris, section 7, page 736, as being ''Generally, the subjects of property comprise all valuable rights or interests protected by law . . .'' and states: ''The Legislature has definitely spoken by the amendment of our statute so as to enlarge the class of property rights and interests which shall receive protection in the event of the death of the wrongdoer. Where the Legislature has so provided the courts should not countenance a tortious deprivation of property without redress.''

Therefore it appears from the pleadings that a ''cause of action'' did exist immediately prior to the applicant's death and that although sounding in tort the cause of action was connected with and primarily based upon contract, either express or implied and that the applicant sustained an injury

to his property and estate, either in being or expectancy, as distinguished from an injury to his person, and therefore a cause of action survived to the administrator of his estate. As to the second cause of action, therefore, the demurrer should have been overruled and the defendants given proper time to plead thereto.

The widow's claim to a cause of action, in the first count, is founded upon the theory that she was the beneficiary named in the application. We have disposed of this claim adversely to that contention unless the pleadings are broad enough to definitely show that at all times she had some community property right in and to the policy if issued, and still has some community property right in and to the applicant's cause of action. The only allegation in the complaint is that the *applicant* paid the agent $21.20 as the first premium on the policy to be issued. There is no allegation that the amount paid was from community funds or that the wife had any community interest on which she could base a cause of action.

In *Union Mutual Life Insurance Co.* v. *Broderick,* 196 Cal. 497 [238 P. 1034], it was held that where the premiums of an insurance policy issued on the life of the husband after coverture are paid entirely from community funds, the policy is a community asset. (See, also, *Modern Woodmen of America* v. *Gray,* 113 Cal.App. 729 [299 P. 754] ; Prob. Code, §§ 201 and 201.5; Civ. Code, §§ 161a, 163, 164 and 687.) In the absence of proper pleading, the demurrer to that cause of action set forth in the first count should be sustained with leave to amend, if plaintiff be so advised.

The judgment of dismissal is reversed.

Barnard, P. J., and Mussell, J. pro tem., concurred.